DISABILITY RIGHTS LEGAL CENTER
Paula D. Pearlman (State Bar No. 109038)
paula.pearlman@lls.edu
Shawna L. Parks (State Bar No. 208301)
shawna.parks@lls.edu
Rebecca Craemer (State Bar No. 274276)
Rebecca.craemer@lls.edu
800 S. Figueroa St., Suite 1120
Los Angeles, California 90017
Tel:  (213) 736-1496 • Fax:  (213) 736-1428

Attorneys for Plaintiffs RUTHEE GOLDKORN,
ALFRED CHICHESTER, MICHAEL FLIPPIN,
KIM WILDER, and JON LONBERG

(Additional counsel listed on next page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| RUTHEE GOLDKORN, ALFRED CHICHESTER, MICHAEL FLIPPIN, KIM WILDER, and JON LONBERG, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, a public entity; SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO, a public entity; TRESSA S. KENTNER, Court Executive Officer, Superior Court of California, County of San Bernardino, an individual, in her official and individual capacities; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 06-CV-00707 VAP (OPx)<br><br>Hon. Virginia A. Phillips<br><br>**Joint Notice of Motion and Motion for:**<br><br>**(1) Conditional Class Certification for Purposes of Settlement;**<br><br>**(2) Preliminary Approval of Class Action Settlement Agreement; and**<br><br>**(3) Approval of Class Notice and Method for Distribution of Notice.**<br><br>**Date:** November 7, 2011<br>**Time:** 2:00 p.m.<br>**Courtroom:** 2 |

PORTER SCOTT
Stephen E. Horan (State Bar No. 125241)
shoran@porterscott.com
Kimberly L. Kakavas (State Bar No. 264642)
kkakavas@porterscott.com
350 University Avenue, Suite 200
Sacramento California 95825
Telephone: (916) 929-1481 • Fax: (916)927-3706

Attorneys for the Defendant COUNTY OF SAN BERNARDINO


JONES DAY
Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 553-7507 • Fax: (949)553-7539

Attorney for the Defendants SUPERIOR COURT OF THE STATE OF
CALIFORNIA SAN BERNARDINO, TRESSA S. KENTNER, COURT
EXECUTIVE OFFICER, SUPERIOR COURT OF SAN BERNARDINO

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................... 2

II.    Statement Of Facts ................................................................................. 3

    A.    Facts Alleged by Plaintiffs .......................................................... 3

    B.    Defendants' Response ................................................................... 6

    C.    Procedural History ........................................................................ 7

III.   Summary of Settlement Terms ................................................................ 9

    A.    Injunctive Relief for the Class – the Transformation of the

        San Bernardino Superior Courts .................................................. 9

        1.    Implementation of Remediation Plans............................ 10

        2.    Training of Court Staff.................................................... 12

        3.    Monitoring....................................................................... 13

    B.    Continued Jurisdiction of the District Court................................ 14

    C.    Compensation for Named Plaintiffs and Attorneys'

        Fees and Costs ............................................................................. 14

    D.    Proposed Notice to Class Members ............................................. 15

IV.    The Proposed Settlement Class Should Be Certified .................................... 16

    A.    Plaintiffs Satisfy the Requirements of Rule 23(a) ......................... 16

        1.    The Numerosity Requirement is Satisfied Because

            There Are Far Too Many Members of the Class to

            Make Joinder Practical ..................................................... 17

        2.    The Commonality Requirement is Satisfied Because

            Plaintiffs Raise Common Questions of Fact and Law...... 18

        3.    The Typicality Requirement Is Satisfied Because

            Plaintiffs' Allegations Involve The Same Misconduct

            Challenged by the Class .................................................... 20

4. The Class is Adequately Represented by Plaintiffs and Class Counsel ............................................................. 20

B. Certification Under Rule 23(b)(2) is Appropriate ........................ 21

V. The Class Settlement Should Be Preliminarily Approved ........................... 22

A. The Amount Offered in Settlement Compared to Strength of Plaintiffs' Case and Risk of Further Litigation ........................ 23

B. The Settlement is Fair, Adequate, and Reasonable Given the Information Obtained and the Quality of the Settlement Negotiations ................................................................. 24

C. Counsel Believe That This Is An Exceptional Settlement ............ 25

D. Settlement Will Conserve Resources for the Public Entity Defendants ...................................................................... 25

E. Reaction of Class Members to the Proposed Settlements ............ 26

VI. CONCLUSION .............................................................. 26

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).........................................22

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448-49 (N.D. Cal. 1994) ........................................................................18, 19, 20, 22

*Bates v. United Parcel Serv.,* 204 F.R.D. 440, 444 (N.D. Cal. 2001) ..........................18

*Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776 (N.D. Cal. 1996)...............17

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) ..................................................................19

*Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, (1981)................................23

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)................................23

*Comer v. Cisneros,* 37 F.3d. 775, 796 (2d Cir. 1994) ...................................................22

*Gardner v. Shell Oil Co.,* 2011 WL 1522377, at *4 (N.D. Cal. Apr. 21, 2011) ..........................................................................................................18

*Gautreaux v. Pierce,* 690 F.2d 616, 621 n. 3 (7th Cir. 1982)......................................23

*Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) ...............................20

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998).....................16, 18, 23

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) .......................16, 20

*Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) .............................................17

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ...................17

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 n.8 (N.D. Cal. 2004) ...............18, 20

*Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199 (N.D. Cal. 2007)..................................................................................................17

*Northern District of California, Dalkon Shield, IUD Prods. Liab.Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)..........................................................................21

*Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995)...............25

*Park v. Ralph's Grocery Co*, 254 F.R.D. 112, 120 (C.D. Cal. 2008) ....................18, 19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 (2011)....................16, 19, 21, 22

*Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001)..............16

**FEDERAL STATUTES**

29 U.S.C. § 794..................................................................................................7

42 U.S.C. § 12131 *et seq.* ................................................................................7

42 U.S.C. § 1983.................................................................................................7

ADA Standards for Accessible Design...............................................7, 8, 19

**FEDERAL REGULATIONS**

28 C.F.R. § 35.150(a) ................................................................................7, 19

28 C.F.R. § 35.150(a)-(b) ...............................................................................7

**FEDERAL RULES**

Fed. R. Civ. P. 23(a) ..............................................................................passim

Fed. R. Civ. P. 23(b) ....................................................................................16, 21

Rule 23(b)(2)............................................................................................passim

Fed. R. Civ. P. 23(e) ...............................................................................15, 23

**STATE STATUTES**

Cal. Gov't Code §§ 70301 *et seq.*..................................................................2

California Civil Code § 51 *et seq.* .................................................................7

California Government Code § 11135.............................................................7

**STATE REGULATIONS**

Title 24 of the California Building Code.................................8, 11, 19, 24

**OTHER AUTHORITIES**

*Manual for Complex Litigation,* §30.42 (3rd ed. 1995) .............................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Motion for Conditional Certification; Preliminary Approval; Approval of Notice

1    PLEASE TAKE NOTICE that on October 31, 2011 at 2:00 p.m., or as soon thereafter

2    as the matter may be heard, in Courtroom 2 of the above entitled Court before the

3    Honorable Virginia A. Phillips, U.S. District Court Judge, located at the Riverside

4    Courthouse, 3470 Twelfth Street, Riverside, California 92501, Plaintiffs and

5    Defendants jointly move for this Court's approval of the proposed class action

6    settlement agreement in the above captioned case of *Ruthee Goldkorn, et al. v. County*

7    *of San Bernardino, et al.*[1]

8           The parties through this motion request that the Court (1) conditionally grant

9    class certification for purposes of settlement, (2) preliminarily approve the class

10   settlement, and (3) approve the Class Notice and order that the notice be distributed.

11   DATED: October 11, 2011                DISABILITY RIGHTS LEGAL CENTER
                                            WINSTON & STRAWN
12
                                            By: _____/s/_____
13
                                                 SHAWNA L. PARKS
14                                               Attorneys for Plaintiffs

15

16   DATED: October 11, 2011                JONES DAY

17                                          By: _Robert Naeve per S per_
                                                 ROBERT A. NAEVE   authorization
18                                               Attorneys for Defendants
                                                 SUPERIOR COURT OF THE STATE
19                                               OF CALIFORNIA, COUNTY OF SAN
                                                 BERNARDINO, and TRESSA S.
20                                               KENTNER

21

22
     DATED: October 11, 2011                PORTER SCOTT
23
                                            By: _Steph Horan per S per_
24                                               STEPHEN E. HORAN   authorization
                                                 Attorneys for Defendant
25                                               COUNTY OF SAN BERNARDINO

26
     ─────────────────────
27   [1] The parties have filed concurrently herewith a stipulation and proposed order requesting that
     this motion be heard on shortened time given that this is a joint motion for preliminary approval
28   and there will be no further briefing.

                                          1
           Motion for Conditional Certification; Preliminary Approval; Approval of Notice

## I.   INTRODUCTION

This settlement will ensure that all members of the public can exercise their right to participate in, witness and otherwise use the programs and facilities of the Superior Court of California, County of San Bernardino ("Superior Court"). Plaintiffs, Ruthee Goldkorn, John Lonberg, and Kimberly Wilder, and Alfred Chichester (collectively "the Plaintiffs") brought suit against the County of San Bernardino, Superior Court of the State of California, County of San Bernardino, and Tressa S. Kentner, the then Court Executive Officer for the Superior Court of California, County of San Bernardino[2] (collectively "the Defendants" and jointly with the Plaintiffs, "the Parties") for failing to assure that the San Bernardino Superior Courts were accessible for individuals with mobility impairments ("the Federal Action").[3]

Plaintiffs alleged in the Federal Action that the programs and facilities of the Superior Court were inaccessible to individuals with mobility disabilities because, among other things, individual courthouses lacked accessible parking, paths of travel, entrances, public restrooms, jury assembly or other assembly areas, and that individual courtrooms lacked accessible entrances, paths of travel, witness stands, jury boxes, assembly areas, counsel tables, deliberation rooms and jury deliberation bathrooms. Defendants denied these allegations, both as to the individual Plaintiffs and as for the system as a whole.

Despite these disagreements, the parties agreed to a settlement protocol that

---

[2]   Ms. Kentner has recently been replaced by Mr. Stephen Nash. Concurrently with this motion the parties are submitting a stipulation to replace Ms. Kentner with Mr. Nash in the Federal Action.

[3]   Historically, the County of San Bernardino owned and operated all of the Subject Courthouses, and was responsible for providing necessary and suitable facilities for court operations.  However, ongoing responsibility for the Subject Courthouses has been assumed by the Judicial Council pursuant to individually-negotiated facility transfer agreements between the County of San Bernardino and the Judicial Council pursuant to the Trial Court Facilities Act, Cal. Gov't Code §§ 70301 *et seq*.  The transfers occurred during the pendency of the Federal Action.  For this reason, the Settlement Agreement apportions responsibility for compliance with the terms and conditions of the Settlement Agreement between the County of San Bernardino and the Superior Court.

resulted in comprehensive assessments of and negotiations regarding the thirteen existing courthouses of the Superior Court. The Parties worked diligently to reach agreement on details throughout every courthouse. The proposed Settlement Agreement between the Parties encompasses the results of these negotiations and, once fully implemented, will transform the courthouses via systemic structural and programmatic modifications designed to ensure that the programs, services and activities offered within the courthouses are accessible to people with mobility and manual dexterity disabilities.

The proposed Settlement Agreement includes individual Remediation Plans for the public spaces of all currently operational courthouses including Rancho Cucamonga, Victorville, Needles, Barstow, Big Bear, Fontana, Chino, Joshua Tree, Juvenile Dependency, Juvenile Delinquency, San Bernardino Civil, San Bernardino Central, and San Bernardino Annex (collectively "the Subject Courthouses"), which contain the details of the extensive modifications that will be made, as well as a means to provide information to the public about access features, and staff training, among other issues.

As such, the Parties ask this Court to (1) grant conditional certification of a class pursuant to Federal Rule of Civil Procedure 23(b)(2) for settlement purposes only; (2) grant preliminary approval of the Settlement Agreement reached between Plaintiffs and Defendants as fair, reasonable and adequate; and (3) approve the notice to be provided to the class members and the method for provision of such notice.

## II.    Statement of Facts

### A. Facts Alleged by Plaintiffs.

The Federal Action arose from what Plaintiffs alleged was the systemic failure of the Defendants to address pervasive physical access barriers within the San Bernardino Courthouse facilities, resulting in barriers to Court programs and services for people with mobility disabilities. *See* First Amended Complaint ("FAC") at ¶¶ 3-7, 19-47.

Plaintiffs allege that the Subject Courthouses had significant physical barriers, and that as a result, it was difficult and sometimes impossible, for people with mobility impairments to park, reach the main entrance, enter the Subject Courthouses and courtrooms, or participate as a member of the public, juror, witness, party or attorney in anywhere near equal fashion.  Plaintiffs further alleged that some emergency exists were not useable and that most bathrooms were not accessible. Plaintiffs made similar allegations with respect to jury boxes, assembly seating, clerk's counters, counsel tables, work rooms, and paths of travel to and within courthouses. The experiences of the Plaintiffs, each of whom have qualifying mobility disabilities and must rely on a wheelchair or walker, illustrates the range of these barriers and their impact on individuals with mobility disabilities.[4] While almost all Plaintiffs have had additional experiences with the San Bernardino Superior Courts since the filing of the First Amended Complaint, Plaintiffs' continue to allege the veracity of those experiences and further represent that these initial experiences remain accurate examples of their overall experience with the San Bernardino Superior Courts. *See* Declaration of Alfred Chichester ("Chichester Decl.") at ¶¶ 3; Declaration of John Lonberg ("Lonberg Decl.") at ¶¶ 3; Declaration of Ruthee Goldkorn ("Goldkorn Decl.") at ¶¶ 3; Declaration of Kimberly Wilder ("Wilder Decl.") at ¶¶ 3.

Plaintiff Goldkorn visited some of the Subject Courthouses on numerous occasions. FAC at ¶¶ 48-57. Plaintiff Goldkorn has been trapped in the Chino Courthouse public restroom twice as a result of physical barriers, both times she had to repeatedly slam on the bathroom door until court staff heard her and assisted her to escape. *Id.* During all of her visits to the Subject Courthouses, Plaintiff Goldkorn has

---

[4]     The FAC also contained one additional Named Plaintiff, Plaintiff Michael Flippin, an attorney whose practice included court cases in San Bernardino County. While Plaintiff Flippin also made important contributions to this case, he passed away on October 8, 2008 and is therefore not included as a class representative. However, the settlement in this matter does resolve damage claims on behalf of his estate.

encountered serious barriers including inaccessible parking, paths of travel, entrances, restrooms and clerks offices. *Id.* Plaintiff Goldkorn continues to allege that she fell out of her wheelchair twice due to physical barriers in the parking and paths of travel. *Id.*

As a retained expert witness, Plaintiff Chichester's livelihood and career depends on his ability to access courthouses and provide oral testimony. FAC at ¶¶ 58-68. Plaintiff Chichester has visited the Central, Victorville, Rancho Cucamonga and Barstow courthouses. *Id.* At each of these locations, Plaintiff Chichester encountered pervasive physical barriers throughout, including inaccessible elevators, courtrooms, witness stands, restrooms, distant or unavailable parking, and difficult or dangerous exterior and interior paths of travel. *Id.* Plaintiff Chichester has been forced to enter many courtrooms from the back of the courtroom and testify from the counsel table with assistance from counsel, in lieu of from the witness stand, experiences that he found degrading and felt undermined his authority with the jury and his client. *Id.* The barriers are so pervasive that Plaintiff Chichester has resorted to hiring an assistant to bring to all San Bernardino Court visits. *Id.*

Plaintiff Wilder answered a summons for jury service at the San Bernardino Superior Courts unprepared for the humiliating and dangerous experience that followed. FAC at ¶¶ 75-84. Upon arrival to the Central Courthouse, Plaintiff Wilder had difficulty with the entrance due to the very steep grade of the exterior wheelchair ramp. *Id.* While waiting to be called for jury service, Plaintiff Wilder asked a Courthouse employee to direct her to the closest accessible women's restroom. *Id.* The employee directed Plaintiff Wilder to a first floor restroom in the main courthouse building, a significant distance from the jury assembly room. *Id.* Upon eventually arriving at the restroom, Plaintiff Wilder noted that the restroom door had a wheelchair symbol affixed to the door and was marked as "accessible." *Id.* However, upon entering the restroom Plaintiff Wilder encountered a completely inaccessible restroom. *Id.* The only slightly larger, yet still far from accessible, stall was so small that Plaintiff Wilder encountered significant difficulty in using the stall and lost

control of her bladder during her struggle. *Id.* Because Plaintiff Wilder had no change of clothes, was forced to return to the jury assembly room and continue through her day with soiled clothing while deeply humiliated and upset about her experience. *Id.*

Plaintiff Lonberg encountered physical barriers at the San Bernardino Superior Courts a number of times while serving as a litigant. FAC at ¶¶85-92. At the entrance to the Central Courthouse, Plaintiff Lonberg has been unable to open the door due to its extreme weight and instead has had to wait for assistance, even in increment weather. *Id.* Plaintiff Lonberg experienced similar problems with courtroom doors in the Central Courthouse, and upon entering courtrooms, often found that there was a complete absence of assembly seating, forcing him to remain in the center of the aisle with his wheelchair. *Id.* Plaintiff Lonberg has also been unable to sit at counsel tables and has suffered for lack of adequate signage. *Id.*

The Plaintiffs' experiences are by no means unique. Plaintiffs alleged that the pervasive nature of these physical barriers were well known among individuals with mobility disabilities and the San Bernardino Court Staff. As noted in the Plaintiffs' First Amended Complaint, letters from San Bernardino County practitioners and judges stated that "[t]he court facilities fail to meet the needs of [people with disabilities] and are generally dilapidated."  *See* "What Judicial Officers and Court Practitioners Are Saying About The Need for Court Facility Bond Funding: Excerpts from Letters to the Legislature, 2005-2006," California's Administrative Office of the Courts, at 16.  These letters further noted that the problems in San Bernardino are representative of a statewide problem: "78 percent of court buildings lack adequate access for people with disabilities, including court buildings in San Bernardino County." *Id.*

## B. Defendants' Response.

Defendants denied and continue to deny that the Subject Courthouses were inaccessible in violation of federal or state laws prohibiting public entities from discriminating on the basis of disability against members of the public with respect to

the full use and enjoyment of public facilities or programs.  In particular, Defendants contended, and still contend, that many of the Subject Courthouses were constructed decades prior to enactment of the Americans with Disabilities Act and other federal and state accessibility laws; and that, in any event, many of the structural elements of the Subject Courthouses fully complied with the Americans with Disabilities Act Architectural Guidelines, the ADA Standards for Accessible Design as well as the applicable provisions of the California Building Code.  Defendants further contended, and still contend, the programs and facilities of the Subject Courthouses fully complied with the provisions of 28 C.F.R. § 35.150(a), which provides among other things, that public entities need only operate "each service, program, or activity so that the service, program, or activity, *when viewed in its entirety*, is readily accessible to and usable by individuals with disabilities."  Defendants contended, and still contend, that this standard does not necessarily require public entities to make each of their existing facilities accessible to and usable by individuals with disabilities; and that public entities may be required to make reasonable structural changes to achieve program accessibility, only if other less costly alternative means to mitigate barriers are ineffective.  28 C.F.R. § 35.150(a)-(b). Finally, Defendants contended that the Federal Action was not suitable for certification as a class action.

### C. Procedural History.

On July 5, 2006, Plaintiff Goldkorn filed a Complaint against Defendants in the Eastern Division of the United States District Court for the Central District of California. Plaintiff Goldkorn alleged that all courthouses of the San Bernardino Superior Court were inaccessible to individuals with mobility disabilities, alleging violations of (1) 42 U.S.C. § 12131 *et seq*. (Title II of the Americans with Disabilities Act); (2) 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973); (3) California Government Code § 11135; (4) California Civil Code § 51 *et seq.* (The Unruh Act); (5) 42 U.S.C. § 1983 (Violation of the First Amendment and Due Process Clause of the Fifth Amendment, and incorporated by the Fourteenth Amendment); and

(6) Article 1, § 1 of the California Constitution. On October 17, 2006, Plaintiffs filed a First Amended complaint adding class allegations as well as additional Named Plaintiffs Chichester, Flippin, Wilder and Lonberg.[5] FAC at ¶¶ 102-146.

During a June 4, 2007 scheduling conference with this District Court, the Parties announced that they had tentatively agreed to a settlement protocol by which all the Subject Courthouses would be assessed for compliance with the then current Americans with Disabilities Act Accessibility Guidelines and Title 24 of the California Building Code. *See* Declaration of Shawna L. Parks ("Parks Decl.") at ¶ 21. The Parties believed that the assessments would eliminate the necessity of discovery and trial, as the Parties would resolve the Plaintiffs' claims based on the results. *Id.* This District Court granted a stay for the parties to pursue the settlement protocol.

The parties agreed that Transystems Corporation/ Concept Marine Associates, Inc. and BOA Architecture/ Government Services ("BOA"), would conduct the assessments, and that Plaintiffs would have an opportunity to review the assessments and assessment process for accuracy. *Id.* The parties chose the Rancho Cucamonga Courthouse as the first test case whereby the parties would agree on the assessment methodology. *Id.* During this assessment Plaintiffs also utilized what the parties referred to as a "shadow" expert who observed BOA's assessment methodology for accuracy. *Id.* at 22. Even following verification of the accuracy of the third party expert's methodology, several rounds of the assessments were generated before the parties could agree on the level of specificity and scope required. *Id.* In addition, even after the parties agreed on the format and approach of the assessments, Plaintiffs provided substantive feedback on all draft assessments. *Id.*

---

[5]    On July 6, 2006, Plaintiff Goldkorn filed a separate action in the Superior Court of California, County of San Bernardino, Case No. SCVSS 139372 (the "State Action"), alleging the same state law claims as stated in Plaintiff Goldkorn's Federal Action. On December 5, 2006, the Parties stipulated to stay the State Action pending resolution of the Federal Action. *See* Settlement Agreement at Recital (2 ), (6) and K. This agreement as to the Federal Action also resolves the State Action.

By February 23, 2009, the Parties had completed assessments on all Subject Courthouses. *Id.* Based on the survey reports, the Parties began negotiating, starting with the Rancho Cucamonga Courthouse. *Id.* at 23. Since that time the Informal Juvenile Traffic Courthouse and the Redlands Courthouse closed and were therefore excluded from the Federal Action. *Id.* at 24; *see also*, Settlement Agreement, Attached as Exhibit A to Parks Decl. at ¶ 3, Recitals at (4), G(3).

Negotiations based on the assessments continued on all Subject Courthouses and were extremely detailed, involving the exchange of at least four rounds of detailed proposals for each and every courthouse. Parks Decl. at ¶ 25. These negotiations extended from the larger facility features, such as main paths of travel and restrooms, down to the smallest facility features, such as doorknobs. The Parties drafted these proposals, extensively researching the details of each feature, completed a number of site visits and participated in countless phone conferences and emails. *Id.* In addition, the Parties met in-person at least five times for full-day settlement negotiation meetings, in addition to three settlement conferences with the Honorable George H. King, the settlement officer in the Federal Action. Parks Decl. at ¶ 25.

The Parties reached an agreement on all injunctive relief issues on or about August 17, 2011, pending approval by the governing boards of the two defendants. *Id.* at 26. The agreement consisted of 13 Remediation Plans that detail the structural and programmatic modifications to each courthouse, a Settlement Agreement that includes all other provisions of the agreement, details on training, and additional negotiated materials, among other elements of the settlement, and a proposed Class Notice (collectively "the Settlement Agreement"). The Superior Court and the San Bernardino County Board of Supervisors approved the proposed settlement on September 27, 2011, and the Settlement Agreement was signed by all Parties on October 11, 2011.

**III.   Summary of Settlement Terms**

**A. Injunctive Relief for the Class – the Transformation of the San Bernardino Superior Courts.**

### 1.  Implementation of Remediation Plans

The Remediation Plans represent the vast majority of the injunctive relief in the Federal Action. The Parties exhaustively negotiated these Remediation Plans to provide the proposed class access to all publically available courthouse programs and services, agreeing to significant modifications to make the following Court features accessible to the Plaintiff Class: (1) public parking, (2) at least the primary path of travel from accessible public parking and public transit to the main entryways for each courthouse, (3) main entryways, (4) all primary paths of travel within the Subject Courthouses, (5) jury assembly rooms, jury deliberation rooms and jury deliberation restrooms, (6) emergency exits and exit routes, (7) clerk's offices, work rooms, and (8) at least one public restroom per courthouse.[6] The Remediation Plans are also designed to provide access to all publicly accessible features within courtrooms, including: (1) assembly seating and aisles, (2) entryways into courtroom and into the well area within courtrooms, (3) counsel tables, (4) jury boxes, (5) witness stands and (6) paths of travel into, around, and out of courtrooms. *See* Settlement Agreement, Exhibit A. In order to accomplish these major objectives, the Remediation Plans were negotiated down to the smallest details. *Id.* The Settlement Agreement also includes a completion deadline for which all modifications in each Remediation Plan will be completed, ranging from 9 to 60 months after the Judgment becomes final. *See* Settlement Agreement at C(1).

The Victorville Remediation Plan serves as an effective example of the approach of the Settlement Agreement. The Remediation Plan provides that the public parking, paths of travel within the parking lots, paths of travel to the main entryway, and two sets of public restrooms, for both men and women, will be made fully accessible. *See* Settlement Agreement, Exhibit A, Victorville Remediation Plan. Of

---

[6]   The larger courthouses will have more than one accessible restroom, however all courthouses will have at least one.

the 13 total courtrooms in Victorville, 12 have witness stands and jury boxes. Under the Victorville Remediation Plan a total of six witness stands will be accessible, and in any courtroom without an accessible witness stand all witnesses with mobility disabilities will have the option of utilizing a table and microphone or moving to a courtroom with an accessible witness stand. *Id.* All jury boxes that do not currently have a wheelchair space will be modified to have a wheelchair space. *Id.* Barriers such as door pressure, door hardware and the rail opening into the well that prevented individuals from entering courtrooms and the well area of courtrooms will all be modified so that they are accessible. *Id.* Accessible wheelchair seating will be provided in every courtroom assembly area. *Id.* Counsel tables that blocked paths of travel or had insufficient knee clearance will be replaced or moved. *Id.* at 5-9, 11, 12. Paths of travel within all public spaces will be modified so there is sufficient maneuvering space. *Id.* at 1-20. Additional features, such as panic bars, unattached floor mats and door pressure, will also be modified to be safe and accessible. The jury assembly area will be modified so that there is a useable counter and path of travel into and out of the room. *Id.* at 13. Two jury deliberation rooms will be made accessible, and juries that contain people with mobility impairments will be assigned to those jury deliberation rooms. *Id.* at 19-20. Smaller facility features will also be made accessible including magazine racks, comment boxes, trash bins, service counters, coat hooks, work tables. *Id.* While every remediation plan is unique to the particular courthouse at issue, Victorville serves as an example of the parties' approach in this matter.

As part of the Settlement Agreement, the Defendants also agree to maintain all modifications in operable and working condition and agree that all modifications will completed in compliance with either the ADAAGs or the ADA Standards for Accessible Design, as well as Title 24 of the California Building Code. *See* Settlement Agreement at E.

The Parties also negotiated a means for members of the public to easily access

and use the modifications at all Subject Courthouses. The Parties agreed that the Superior Court will maintain a new "Access Guide" and Diagrams on its website and posted in each clerk's office. *See* Settlement Agreement at F(2)(a-b); and Exhibit C attached to the Settlement Agreement. The "Access Guide" explains the permanent accommodations available for testifying witnesses and jurors with mobility disabilities included as part of this Settlement Agreement. *Id.* The Diagrams will show the location of accessible parking, paths of travel to main entrances, main entrances, and restrooms on basic maps of each courthouse, such that people with disabilities visiting the courthouse may obtain the location of these basic features ahead of time. *Id.*

The Disability Rights Legal Center ("Class Counsel") will continue to maintain copies of each Subject Courthouse Assessment, and will make them available for review by class members upon request. *See* Settlement Agreement at n. 1.

### 2. Training of Superior Court Staff

The training of the San Bernardino Superior Courts' staff was considered important by Plaintiffs. While the Superior Court will develop the training program and materials, Class Counsel will also be able to review and comment on the materials. *Id.* at F(3)(a-d). The Parties have agreed to meet and confer if the Defendants disagree with Class Counsel's proposals to the training materials. *Id.* at F(3)(d).

As part of the Settlement Agreement, the Superior Court will provide a minimum of one hour of training regarding the requirements of the Settlement Agreement and California Rule of Court 1.100, the State of California's current policy regarding court accessibility. This training will be given to (1) all current ADA coordinators, courtroom clerk's, clerk's office employees who communicate with the public, courtroom attendants, and any courthouse security staff employed by the Superior Court at all Subject Courthouses, (2) all newly appointment Court Staff Members within 60 days of their first day of employment, and (3) on an annual basis during the Term of the Agreement to all Court Staff Members beginning in January

2012. *Id.* at F(3)(a).

In addition, the San Bernardino Superior Court also agreed to (1) provide all judicial officers (including Judges and Commissioners) a copy of the Settlement Agreement, and (2) provide at least one house of training to all judicial officers assigned to the Subject Courthouses regarding the requirements of the Settlement Agreement, California Rule of Court 1.100, and ADA coordinators, and (3) provide at least one hour of training to all newly appointed judicial officers within 120 days of the date upon which they assume their offices. *Id.* at F(3)(b).

The Superior Court also agreed to provide to the Court Services Division of the San Bernardino County Sheriff's Office, the entity that employs certain Superior Court security staff, a copy of the Superior Court's programmatic accessibility materials, attached as Exhibit C to the Settlement Agreement. *Id.* at F(3)(c).

### 3.  Monitoring

The Parties have agreed to a monitoring process where Class Counsel will monitor the implementation of the Settlement Agreement and the Parties will exchange information in a predetermined manner set out in the Settlement Agreement to facilitate this monitoring. *Id.* at D.

The process requires that, upon completion of each Remediation Plan, the Defendants will provide Class Counsel with individual "completion notices" for each courthouse, which confirm all remediation work has been completed pursuant to the terms of the Settlement Agreement within 30 days after work has been completed. *Id.* at D(1-3). Class Counsel shall inspect each courthouse for which this notice of completion was provided within 60 days of receipt of a completion notice. Should Class Counsel find that any part of the Settlement Agreement has not been successfully implemented, Class Counsel will issue a notice of non-completion to Defendants, describing the parts of the Settlement Agreement that have not been implemented. *Id.* The Defendants will have 90 days to remedy those issues of non-compliance and then issue a "supplemental completion notice," within 15 days after

the work has been completed. If either of the Defendants requires more than 90 days, or if either Defendant disagrees with class counsels' notice of non-compliance, the Parties will meet and confer and, if needed, follow the dispute resolution procedures described in the Settlement Agreement. *Id.* at D(1-3), (M).

## B. Continued Jurisdiction of the District Court.

The Settlement Agreement provides that the District Court will retain jurisdiction to interpret and enforce the specific provisions of this Agreement and to hear and adjudicate any dispute or litigation arising from the interpretation or application of this Agreement. *See Id.* at M, Q(12). Retention of jurisdiction will continue until 180 days after all remediation work required by this Settlement Agreement has been completed. *Id.* This work is scheduled to be completed within 60 months from the date that judgment is entered. *See Id.* at C(1). Should the Parties fail to complete all remediation work within 66 months from the date upon which judgment becomes final, the Parties may request that the District Court schedule a status conference to address unresolved issues. *See Id.* at Q(12).

During the term of the Agreement, the Parties will submit annual reports, on the anniversary of the date the judgment becomes final, stating the status of the implementation of this Agreement and identifying any outstanding issues on which the Parties are then in disagreement, or confirming that the Parties have completed all work required by this Agreement. *See Id.* at P.

## C. Compensation for Named Plaintiffs and Attorneys' Fees and Costs.

As part of the Settlement Agreement, the four Named Plaintiffs and the Estate of Michael Flippin will receive damages, aggregated to a total of $80,000.00, to compensate them for any damages that they incurred as a result of their claims asserted in the Federal Action. *Id.* at H. The proposed Settlement Agreement will not affect any Plaintiff Class Member's right to bring a claim for damages against any Defendant. *See Id.* at I(2). Defendants have agreed to pay attorneys' fees and costs to Class Counsel in the amount of $690,000.00. *Id.* at N. The Defendants have also

agreed to provide Class Counsel with monitoring fees, up to a maximum of $61,000.00, for all documented time and costs spent in monitoring the Agreement and documented per the terms of the Settlement Agreement. *Id.*

### D. Proposed Notice to Class Members.

The Parties have prepared a draft Class Notice, which is attached as Exhibit B to the Settlement Agreement, and request that the District Court approve this notice. The Parties have further agreed that the Class Notice will be (1) posted not later than 14 days after the execution of the Agreement and entry of an order by the District Court granting preliminary approval of the proposed settlement agreement, certification of the class for purposes of settlement and approval of the Class Notice. The notice will be posted on all parties' websites and within the clerk's office of each of the Subject Courthouses for at least 30 days. In addition, the Plaintiffs will mail or otherwise provide copies of the Notice to a number of disability advocacy organizations in the San Bernardino area listed in the Settlement Agreement. *See* Settlement Agreement at I and proposed Class Notice, attached as Exhibit B to the Settlement Agreement.

The Parties agree that these methods are the most likely to reach members and potential members of the class and satisfy the requirements of Rule 23(e). *See* Parks Decl. at ¶ 28. The Parties further propose that any class member may object to the proposed agreement by mailing a written objection, or by calling a toll free number, at least 10 days after the close of the notice period. Class Notice at page 6. The telephone option is particularly important in assuring that the objection process is accessible to those class members who may experience difficulty in writing and sending in an objection. *Id.* at 29. Typically, Plaintiffs' counsel provides any responses received in a separate document for the District Court's review, along with the motion for final approval. *Id.* at 30. However, Plaintiffs' counsel will of course, accommodate the District Courts' wishes with respect to the procedure on this matter. *Id.*

**IV.    The Proposed Settlement Class Should Be Certified.**

    **A.    Plaintiffs Satisfy the Requirements of Rule 23(a).**

For the purposes of settlement the class is defined as all "litigants, attorneys, witnesses, jurors, and other public users of the courthouse facilities of San Bernardino County, with mobility and/or manual dexterity disabilities who have used or will use courthouse facilities of the Superior Court of California, County of San Bernardino during the class period" (collectively "the Plaintiff Class"). *See* Settlement Agreement at B (1)(a). The class period is defined as starting July 5, 2006 and extending through the date upon which the Judgment becomes final without modification. *See* Settlement Agreement at Recitals at (6) on Page 3.

Here, certification of the Plaintiff Class should be granted because the requirements of Rule 23(a) and (b)(2) have been satisfied. Plaintiffs must satisfy the four requirements of Rule 23(a) and one of the three categories of Rule 23(b) to certify this lawsuit as a class action. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001). Federal Rule of Civil Procedure 23(a) requires that a party moving to certify a class show that: (1) the proposed class is so numerous that joinder of all its members would be impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the class; and (4) the class representative will fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). In addition to these requirements, the party moving for class certification must also show that the class is maintainable under Rule 23(b). See Fed. R. Civ. P. 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(2).

The decision whether to certify a class is committed to the district court's discretion. S*ee Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 (2011). However, "a motion for class certification is not the appropriate point at which to resolve the merits of a plaintiff's claim.'" *Hanon v. Dataproducts Corp*., 976 F.2d 497, 509 (9th Cir. 1992);

*see also Wal-Mart*, 131 S.Ct. at 2552 (reiterating that this inquiry only "touch[es] aspects of the merits in order to resolve preliminary matters").

Further, "Rule 23's requirements 'must be read liberally in the context of civil rights suits.'"  *Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776 (N.D. Cal. 1996) (*citing Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975)).

As set forth below, the Plaintiff Class satisfies all four requirements of Rule 23(a) and the requirements of Rule 23(b)(2).

### 1. The Numerosity Requirement is Satisfied Because There Are Far Too Many Members of the Class to Make Joinder Practicable.

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The San Bernardino Superior Courts currently consist of 13 active courthouses, and at a minimum, serve over 2 million residents in San Bernardino County alone. See Census Statistics attached as Exhibit E to Parks Decl. at ¶ 31. 2010 American Community Survey figures from the U.S. Census Bureau show that that 10.6% of the total, non-institutionalized population in San Bernardino has a disability and approximately 3.4% have an ambulatory disability. *See Id.* Thus, of the approximately 2,007,397 people in San Bernardino County, approximately 70, 259 have an ambulatory disability. *See Id.* Non-San Bernardino residents also use the courts and therefore general U.S. census figures are also relevant in establishing numerosity. U.S. Census Bureau data shows that 11.9% of the total U.S. population has a disability, and approximately 3.5% has an ambulatory disability, meaning that of the approximately 304,287,836 people in the total U.S. population, approximately 10,650, 074 people have an ambulatory disability. *See Id.*

The numerosity threshold is not high and classes of as few as 40 members are generally sufficient to satisfy Rule 23(a)(1). *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("'As a general rule, . . . classes of 40 or more are numerous enough.'"); *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185,

1199 (N.D. Cal. 2007). Courts, in the disability rights context, routinely certify classes where numerosity is established through statistical evidence and census figures. *See Park v. Ralph's Grocery Co*, 254 F.R.D. 112, 120 (C.D. Cal. 2008); *see also Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 n.8 (N.D. Cal. 2004) (collecting cases) (dismissing defendant's argument that "census data is insufficient to establish numerosity" because "'[c]ensus data [is] frequently relied on by courts in determining the size of proposed classes'").

Moreover, numerosity does not require the Plaintiffs to state the exact number of potential class members. *Bates v. United Parcel Serv.,* 204 F.R.D. 440, 444 (N.D. Cal. 2001) ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity"). "[W]here 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *Gardner v. Shell Oil Co.,* 2011 WL 1522377, at *4 (N.D. Cal. Apr. 21, 2011); *see also Moeller*, 220 F.R.D. at 608 ("A court may make common sense assumptions to support a finding that joinder would be impracticable.").

Here, common sense indicates that the size and breath of the services and programs provided by the San Bernardino Superior Courts reach a substantial population of people with mobility impairments and thus, easily satisfy the numerosity requirement.

### 2. The Commonality Requirement is Satisfied Because Plaintiffs Raise Common Questions of Fact and Law.

Rule 23(a)(2) requires that there be either questions of fact or law common to the members of the proposed class. Not all questions of law and fact must be common; "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 976 F.2d at 1019; *Arnold v. United Artists Theatre Circuit*, *Inc.*, 158 F.R.D. 439, 448-49 (N.D. Cal. 1994) ("The actions of the defendant need not

affect each member of the class in the same manner.' [Citation omitted].  Nor must 'all questions of law and fact involved in the dispute be common to all members of the class.'").

Indeed, the Supreme Court recently reaffirmed that "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart*, 131 S.Ct. at 2556 (internal quotations omitted).  So long as Plaintiffs' claims "depend upon a common contention [that is] of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" - commonality is established. *Id.* at 2551.

The instant lawsuit falls squarely within the conditions identified by the *Walmart* case. The San Bernardino Superior Courts are governed by the access standards articulated in the ADA and related statutes. For example, for all pre-existing facilities (which are the vast majority of the San Bernardino Superior Court facilities), must comply with program access standard, namely that each program "when viewed in its entirety, [it] is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).  Whether a particular building feature is considered "accessible" is measured the same in every class members' case, and codified for both federal and state laws in the form of very detailed standards, referred to as the Americans with Disabilities Act Standards for Accessible Design (previously referred to as the Americans with Disabilities Act Accessibility Guidelines, or "ADAAGs") and the California Building Code, Title 24.  Indeed, in *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008), a case that also involved physical barriers to public services, the District Court for the Northern District of California noted that "[c]ases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)."  As such, courts routinely certify class actions based on physical access violations. *See Park*, 254 F.R.D. at 120; *Arnold*, 158

F.R.D. at 448-450 (N.D. Cal. 1994); *Moeller*, 220 F.R.D. at 608-610.

As all members of the class have qualifying mobility and/or manual dexterity impairments, the exact same guidelines, in breadth and type, apply across the class, and resolution of the Federal Action would resolve the validity of all class claims "in one stroke," amply satisfying Rule 23 (a)(2).

### 3. The Typicality Requirement Is Satisfied Because Plaintiffs' Allegations Involve The Same Misconduct Challenged by the Class.

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3). Named Plaintiffs claims are typical if they are "'part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Arnold*, 158 F.R.D. at 449 (*quoting Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982)). Typicality "assure[s] that the interest of the named representatives aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Here, all four Plaintiffs are individuals with qualifying mobility impairments who personally experienced the physical barriers throughout the San Bernardino Superior Courts on a repeated and ongoing basis. Furthermore, all Plaintiffs challenge the same course of conduct on the same legal grounds as would be challenged by the class as a whole. Plaintiffs, like the proposed settlement class, allege violations of the same federal and state laws based on Defendants' failure to provide access to programs, services and activities, and to assure constitutionally mandated access to courts. FAC at ¶¶ 93-99. Accordingly, the typicality requirement is satisfied.  *See Arnold*, 158 F.R.D. at 450. (claims of named plaintiffs, who attended numerous different theaters in which they allege accommodations violate ADA, are typical).

### 4. The Class is Adequately Represented by Plaintiffs and Class Counsel.

Lastly, Rule 23(a) requires that the representative Parties must fairly and adequately protect the interests of the class. "Adequacy of representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a

sharing of interests between the representatives and the absentees, and the unlikelihood that the suit is collusive."  *In re Northern District of California, Dalkon Shield, IUD Prods. Liab.Litig.*, 693 F.2d 847, 855 (9th Cir. 1982).

As set forth above in the discussion of the commonality and typicality requirements, Plaintiffs' share the same interests of declaratory and injunctive relief as the proposed class members.  Plaintiffs share the proposed class' common interest in ensuring that the San Bernardino Superior Courts are as equally accessible to members of the public with mobility disabilities as for the public at large. See Chichester Decl. at ¶¶ 3-5; Lonberg Decl. at ¶¶ 3-5; Goldkorn Decl. at ¶¶ 3-5; Wilder Decl. at ¶¶ 3-5. Moreover, Plaintiffs' individual pursuit of damages for their alleged injuries did not impact or interfered with the parties' pursuit of class-wide injunctive relief as the Plaintiffs repeatedly demonstrated their commitment to the class by their extensive work during settlement negotiations . *Id.* at ¶ 6-9.

Plaintiffs have been represented by the Disability Rights Legal Center, an organization with extensive experience in similar actions, who, among other things, litigated and settled a similar action against the Los Angeles County Superior Court system. *See* Parks Decl. at ¶¶ 4-20. As such, all elements of Rule 23(a) are met in this case.

### B. Certification Under Rule 23(b)(2) is Appropriate.

In addition to the four requirements of Rule 23(a), Plaintiffs must also satisfy the requirements contained in at least one of the subdivisions of Rule 23(b). Plaintiffs move for class certification under Rule 23(b)(2), which is satisfied when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ." Fed. R. Civ. P. 23(b)(2). The key to Rule 23(b)(2) certification is "'the indivisible nature of the injunctive or declaratory remedy warranted - the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 131

1  S.Ct. at 2557

2       This Federal Action fits squarely within the confines of Rule 23(b)(2).  The

3  Defendants' failure to provide for accessible courts and court services forms the basis

4  of both the Plaintiffs' and class claims as a whole. As a result, the injunctive relief

5  obtained by Plaintiffs applies to the entire class.

6       Rule 23(b)(2) certification is also warranted because the only relief sought by

7  the Proposed Class is declaratory and injunctive relief. This relief applies to the

8  Proposed Class generally, rather than to individual class members uniquely.  *See Wal-*

9  *Mart*, 131 S.Ct. at 2557(stating that class certification is justified under Rule 23(b0(2)

10 when all members are entitled to the same injunction).  No classwide monetary relief

11 is sought in this Federal Action.  *See Wal-Mart*, 131 S.Ct. at 2557-2561(holding that

12 Rule 23(b)(2) certification was unwarranted because the class asked for class-wide

13 monetary relief that was not incidental, but differed for each member of the class).  In

14 this case, injunctive and declaratory relief are the only forms of class-wide relief

15 sought.

16       In fact, suits brought to vindicate civil rights are exactly the type of suits for

17 which Rule 23 (b)(2) was designed. The Supreme Court very recently reaffirmed its

18 observation in *Amchem* that "'[c]ivil rights cases against Parties charged with

19 unlawful, class-based discrimination are prime examples' of what [Rule] (b)(2) is

20 meant to capture."  *Wal-Mart*, 131 S.Ct. at 2557(citing *Amchem Prods., Inc. v.*

21 *Windsor*, 521 U.S. 591, 614 (1997); *Comer v. Cisneros,* 37 F.3d. 775, 796 (2d Cir.

22 1994) (race discrimination case); *Arnold,* 158 F.R.D. at 452 (disability discrimination

23 case).  This case concerns the civil rights of people with disabilities to access state

24 court services and is therefore one of the "'prime examples'" of when Rule 23(b)(2)

25 certification is necessary.  For these reasons, certification of the Proposed Class under

26 Rule 23(b)(2) is appropriate.

27 **V.      The Class Settlement Should Be Preliminarily Approved.**

28       At preliminary approval, the court's task is to "determine whether the proposed

settlement is within the range of possible approval." *Gautreaux v. Pierce,* 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (internal quotations omitted). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Here, the proposed settlement is manifestly reasonable, providing the very relief sought by the complaint and thus, should be approved by the District Court.

The Ninth Circuit, in *Hanlon*, sets forth the following factors for a district court to consider in determining the fairness of a settlement approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of the counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026; *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). Reviewing these factors at the preliminary approval stage shows the proposed Settlement Agreement is "fundamentally fair, adequate, and reasonable," and that it meets the relevant *Hanlon* factors.

## A. The Amount Offered in Settlement Compared to Strength of Plaintiffs' Case and Risk of Further Litigation.

"Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in the settlement . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, (1981) (internal citation omitted).

Plaintiffs believe that they would have likely prevailed at trial given the established law mandating accessibility to public courts and the strong evidence that the San Bernardino Superior Courts were inaccessible. Parks Decl. at ¶ 33. The results of the courthouse assessments completed by the third party expert only confirmed

Plaintiffs' allegations and resulted in the extensive physical and programmatic modifications included in the Settlement Agreement.

Moreover, in Plaintiffs' Counsel's estimation, the injunctive relief in the parties' settlement may exceed that which the District Court would have ordered following a trial on the merits, particularly given the scope and detail of relief, and Plaintiffs' ability to participate in the fashioning of the relief. *Id.* The Parties thus recognized that there was much more to be gained through reasonable settlement discussions than through continued litigation and trial in this matter. *Id.*

Furthermore, while disagreeing on the merits of the individual cases, the Parties agree that it would be expensive and time-consuming to litigate this case through trial, that the outcome of a trial is uncertain, and that resolution of the Federal Action through settlement is appropriate. *See Id.* at ¶ 34.  A full-blown trial would require substantial documentary evidence and expert testimony. *See Id.* Such a trial is unnecessary where Defendants have agreed to the relief that Plaintiffs seek. *See Id.*

Plaintiffs' Counsel believe that this class settlement is both fair and reasonable for all Parties and that, if approved, this settlement will result in access for individuals with mobility disabilities to all San Bernardino Superior Court facilities available to the public, including courtrooms, jury assemblies, clerk's offices, as well as general access throughout all Subject Courthouses.  *Id.* at 35.

**B. The Settlement is Fair, Adequate, and Reasonable Given the Information Obtained and the Quality of the Settlement Negotiations.**

In this case, the Parties dispensed with the oppositional process and duplication of effort entailed in formalized discovery and instead agreed to a settlement protocol that included third party assessments of all Subject Courthouses using the ADAAGs and Title 24 of the California Building Code as the applicable standards. See Settlement Agreement, Recitals at (4). Once completed, these assessments were provided to all Parties and listed all violations of these standards, for all Subject Courthouses, in detail. Through the settlement protocol, the Parties were able to

24

assure that all sides had equal access to relevant information, and as a result, the negotiations that followed were exceptionally informed and directed. Ultimately, these assessments formed the basis of all negotiations and fundamentally shaped the resulting Settlement Agreement, ensuring it was fair and reasonable to all parties. *See Id.* at 21-26, 35.

### C. Counsel Believe That This Is An Exceptional Settlement.

The Ninth Circuit has recognized that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Class settlements reached in arms-length negotiations between experienced, capable counsels after meaningful discovery are presumed correct. *Manual for Complex Litigation,* §30.42 (3rd ed. 1995). In this case, as discussed previously, Plaintiffs are represented by a very experienced disability rights legal organization. Defendants are also represented by Jones Day and Porter Scott, two firms which have significant experience in public entity defense as related to matters arising under the ADA and related accessibility laws. Declaration of Robert A. Naeve ("Naeve Decl."), ¶¶ 2-3; Declaration of Stephen E. Horan ("Horan Decl.") at ¶¶ 2-3. Furthermore, the Parties have negotiated an arms-length settlement in a cordial yet adversarial manner close to five years prior to reaching a final agreement. See Parks Decl. at ¶ 25. In sum, the experience of counsel, and the nature and quality of their negotiations, weigh greatly in favor of the District Court's approval.

### D. Settlement Will Conserve Resources for the Public Entity Defendants.

To the extent this factor is significant, the County of San Bernardino and the San Bernardino Superior Courts are governmental public entities and are utilizing limited public resources. This Settlement preserves those public resources, properly balances Defendants' concerns with the interests of the Plaintiff Class, avoids the time and expense of further litigation, and results in a benefit to the public as a whole.

**E. Reaction of Class Members to the Proposed Settlements.**

At this point, this factor is not applicable because Notice has not yet been provided to the settlement class. The Named Plaintiffs have been extensively consulted during the process of negotiations and each approve of the Settlement Agreement. See Parks Decl. at ¶¶ 37; Chichester Decl. at ¶¶ 6, 8-9; Lonberg Decl. at ¶¶ 6, 8-9; Goldkorn Decl. at ¶¶ 6, 8-9; Wilder Decl. at ¶¶ 6, 8-9. The Parties anticipate few, if any, substantive objections to the settlement.

**VI. Conclusion**

For the above reasons, the Parties respectfully request that this Court grant Plaintiffs' and Defendants' Joint Motion.

Respectfully Submitted,

DATED: October 11, 2011                    DISABILITY RIGHTS LEGAL CENTER


By: _____/s/_____
        SHAWNA L. PARKS
        Attorneys for Plaintiffs


DATED: October 11, 2011                    JONES DAY


By: _____
        ROBERT A. NAEVE authorization
        Attorneys for Defendants
        SUPERIOR COURT OF THE STATE
        OF CALIFORNIA, COUNTY OF SAN
        BERNARDINO, and TRESSA S.
        KENTNER

1    DATED: October 11, 2011                    PORTER SCOTT

2

3                                               By: _____
                                                    STEPHEN E. HORAN *authorization*
4                                               Attorneys for Defendant
                                                COUNTY OF SAN BERNARDINO
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28