O

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUTHEE GOLDKORN, an individual, | ) ) ) | Case No. EDCV 06-707-VAP(OPx) |
| Plaintiff, | ) ) | **ORDER GRANTING MOTION FOR** |
| v. | ) ) | **FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| COUNTY OF SAN BERNARDINO, et al. | ) ) ) | **[Motion filed on January 30, 2012]** |
| Defendants. | ) ) | |

The parties' joint motion for final approval of class action settlement ("Motion for Final Approval" or "Motion") is before the Court for hearing on February 13, 2012.  After reviewing and considering all papers filed in support of the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

**A.  Procedural Background**

Plaintiffs and the proposed class members encompass all litigants, attorneys, witnesses, jurors, and other

users of the courthouse facilities of San Bernardino
County with physical, mobility, or manual dexterity
disabilities.[1]  (First Am. Compl. ("Am. Compl.") (Doc.
No. 6) ¶ 13.)  On July 5, 2006, Plaintiffs brought this
action against Defendants.  (Doc. No. 1.)  Plaintiffs
alleged that all courthouses of the San Bernardino
Superior Court were inaccessible to individuals with
mobility disabilities in violation of:

1.  Title II of the American Disabilities Act
    ("ADA");

2.  Section 504 of the Rehabilitation Act of 1973
    ("Section 504");

3.  The Unruh Civil Rights Act ("Unruh Act");

4.  California Government Code Section 11135
    ("Section 11135");

5.  The First, Fifth, and Fourteenth Amendments to
    the United States Constitution and Article I
    Section 3 of the California Constitution.  (Am.
    Compl. ¶ 1.)


On July 6, 2006, Plaintiffs filed their first amended
complaint ("the Amended Complaint") to assert claims for
declaratory and injunctive relief on behalf of the class.
(Am. Compl. ¶ 146.)  On the same day, Plaintiff Goldkorn

---

[1] The Named Plaintiffs in the action are Ruthie
Goldkorn, Alfred Chichester, Jon Lonberg, Kim Wilder, and
the Estate of Michael Flippin (collectively "Named
Plaintiffs").  (Am. Compl. at 1.)

also filed a separate action ("the State Action") in the Superior Court, County of San Bernardino alleging the same state claims included in the Complaint. (Decl. of Shawna L. Parks "Parks Decl." (Doc. No. 106) Ex. A. ("Settlement") ¶ 2.)  The parties stipulated on December 5, 2006, to stay the State Action pending resolution of this case.  (Id.)

On December 11, 2006, Defendants filed their answer to the Amended Complaint denying liability. (Doc. No. 15.)  The parties participated in discovery and settlement negotiations throughout 2007. (See Doc Nos. 18-20.)  On June 4, 2007, in a joint scheduling conference report, the Parties agreed to a settlement protocol by which a third party expert retained by the County would assess the public areas of the Rancho Cucamonga, Victorville, Needles, Barstow, Big Bear, Fontana, Chino, Joshua Tree, Juvenile Delinquency, Juvenile Dependency, San Bernardino Civil, San Bernardino Central, and San Bernardino Annex courthouses (the "Subject Courthouses"), based on ADA Guidelines, as well as Chapter 11B of the California Building Code. (Doc No. 20.)

The parties agreed on June 4, 2007, to stay litigation of the action in order to develop a "settlement protocol." (Doc. No. 22.)  Over the next

three years, the third party expert completed surveys of each courthouse site, and the parties agreed to remediation and renovation plans based on these findings. (See Doc. Nos. 23, 24, 27, 29, 37, 38, 45, 51, 52, 68-76.)

The parties jointly submitted a Motion for Preliminary Approval of Class Action Settlement Agreement ("Motion for Preliminary Approval") on October 11, 2011. (Doc. No. 106.)  The parties filed the "Motion for: (1) Conditional Class Certification for Purposes of Settlement; (2) Preliminary Approval of Class Action Settlement Agreement; (3) Approval of Class Notice and Method for Distribution of Notice Settlement;" 4) the Declaration of Shawna L. Parks ("Parks Declaration"); (5) Declarations from Named Plaintiffs in Support of the Motion; (6) the Declaration of Defendants' counsel in Support of the Motion; and (7) a Proposed Order.  (Id.)

In a November 10, 2011, order granting the Motion for Preliminary Approval ("Preliminary Approval Order"), the Court:

(1) conditionally certified a class ("Class") consisting of "all litigants, attorneys, witnesses, jurors, and other public users of the courthouse facilities of San Bernardino County,

4

with mobility, and/or manual dexterity
disabilities who have used or will use
courthouse facilities of the Superior Court of
California, County of San Bernardino during the
Class Period";

   (2) granted preliminary approval of the parties'
Settlement set forth in the jointly submitted
Motion for Preliminary Approval;

   (3) directed dissemination of the class notice; and

   (4) set the hearing date for final approval, as well
as dates for the notice and objection period.
(See Doc. No. 119.)

The Court established January 23, 2012, as the
deadline for class members ("Class Members") to file
claims or objections, and ordered the parties to file a
motion for final approval of the settlement no later than
January 30, 2012.  (Prelim. Approval Order at 23.)

On January 30, 2012, the parties jointly filed the
Motion for Final Approval, and the declarations of
Rebecca Craemer, Shawna L. Parks, Robert A. Naeve, and
Stephen E. Horan in support of the Motion.  (Doc. No.
120.)  Plaintiff also filed a Motion for Approval of
Attorneys' Fees for Class Counsel ("Motion for Attorneys'
Fees").  (Doc. No. 121.)

**B.    Settlement Terms**

   The parties agreed to a Settlement granting injunctive and declaratory relief to the Class without providing for a monetary award to the Class.  (See Settlement §§ C, D (laying out remediation plans and requirements to verify compliance).)  The Settlement creates remediation plans for the public spaces of all currently operational courthouses in San Bernardino County, to include all of the Subject Courthouses.  (Mot. at 3.)

   The remediation plans will be implemented over a five year period, according to the Settlement, and the Superior Court will be obligated to maintain all accessible features, provide staff training, and make the most important accessible features known to the public. (Id.)

   Under the Settlement Agreement, Class counsel will receive $690,000.00 as compensation for their work on the lawsuit and for costs incurred during litigation. (Settlement § N.1; see also Mot. for Att'ys' Fees at 2.) The agreement specifies that the County shall be responsible for paying $365,000.00 of the attorneys' fees, while the Superior Court shall be responsible for paying $325,000.00 of the fees.  (Id. § N.1.)  The County will also pay a collective $80,000.00 damages award to

Named Plaintiffs. (Settlement § H.)  The County will issue a check for this amount to the Disability Rights Legal Center ("DRLC") and Class counsel will then apportion the damages payment to Named Plaintiffs. (<u>Id.</u> § H.)  The parties agree to allocate the damages using a pro rata approach that takes into account the number of visits on which each Named Plaintiff alleged to have encountered barriers.[2]  (Mot. at 9.)

The Settlement Agreement also includes a provision allowing Class counsel to recover reasonably incurred attorneys' fees and costs for monitoring compliance with the Settlement Agreement. (Settlement § N.2.)  This amount is not to exceed $61,000.00. (<u>Id.</u>; Mot. for Att'ys' Fees at 2.)

**C.   Settlement Procedure**

**1.   Notice to Class Members and Claims Received**

The parties followed the process for providing notice approved in the Preliminary Approval Order. (<u>See</u> Preliminary Order at 21-22.)  Class counsel placed the Notice of Settlement ("Notice") and the Settlement Agreement at the top of the DRLC's website home page. (Mot. at 12.)  Counsel included information on the

---

[2] Under this approach, Plaintiff Chichester will receive $24,800.00, Plaintiff Lonberg $21,600.00, Plaintiff Wilder $14,400.00, Plaintiff Goldkorn $12,800.00, and the Estate of Michael Flippin $6,400.00. (Mot. at 8-11.)

settlement in the DRLC's weekly electronic newsletter. (Id.)  Counsel also sent the Notice to San Bernardino organizations with a request they post or distribute the Notice to any interested parties.[3]  (Id.)

Notice was posted on the San Bernardino Superior Court's website, San Bernardino County's website, and with the clerk's office of each of the Subject Courthouses.  (Mot. at 12.)

Class counsel received no written objections to the proposed Settlement Agreement, and only two telephone messages referencing the Notice.  (Mot. at 13.)  One message involved a general critique of the government and the judiciary.  (Id.)  Class counsel contacted the other caller, who was inquiring about the case, explained the terms of the Settlement, and then sent the complete Settlement Agreement to the caller.  (Id.)

### 2.  Notice of Settlement

The Notice provided a summary of the litigation and settlement negotiations, describing the claims Plaintiffs alleged in both the state and federal actions and the

---

[3] These organizations included Rolling Start, Inland Counties Legal Services, Inland Empire Disability Consortium, Inland Empire Health Plan, San Bernardino Community College Disabled Students Program, Crafton Hills College Disabled Student Program, CSUSB Disabled Students Program, and the San Bernardino County Bar Association.  (Mot. at 12.)

8

third party assessment process.  (Settlement Ex. "B"
("Not.") at 1-2.)   The Notice explained that the
settlement negotiations occurred at "arms-length" through
multiple meetings and through settlement conferences with
the Honorable George H. King, another district judge on
this Court.  (Id. at 2.)  The Class Members were advised
as to the date of the Order provisionally approving the
Settlement Agreement.  (Id.)  The Notice then provided a
detailed description of the Settlement terms, including a
definition of the class, details of the remediation
plans, the monitoring requirements, the new training
requirements for Superior Court personnel, and amounts of
the attorneys' fees, costs and damages for Named
Plaintiffs.  (Id. at 2-5.)

     The Notice informed the Class Members of the effect
of the Settlement Agreement, alerting them that they will
be enjoined from asserting any claims related to the
allegations in the state and federal actions against
Defendants.  (Id. at 5-6.)  The Class Members are
informed of the date, time, and location of the final
settlement approval hearing, and are given the
opportunity to submit objections or comments to Class
counsel at DRLC no later than ten days after the close of
the Notice Period.  (Not. at 6.)  The Notice alerted
Class Members that they can obtain a complete copy of the

1    Settlement Agreement by contacting the DRLC and provided

2    the Center's contact information. (<u>Id.</u> at 7.)

3

4                        **II. LEGAL STANDARD**

5        Parties seeking class certification for settlement

6    purposes must satisfy the requirements of Federal Rule of

7    Civil Procedure 23 ("Rule 23").  <u>Amchem Prods., Inc. v.</u>

8    <u>Windsor</u>, 521 U.S. 591, 620 (1997).  A court considering

9    such a request should give the Rule 23 certification

10   factors "undiluted, even heightened, attention in the

11   settlement context."  <u>Id.</u>

12

13       Under Rule 23(a), in order to bring a class action, a

14   plaintiff must demonstrate:

15       (1) the class is so numerous that joinder of all
         members is impracticable ["numerosity"], (2) there
16       are questions of law or fact common to the class
         ["commonality"], (3) the claims or defenses of the
17       representative parties are typical of the claims
         or defenses of the class ["typicality"], and (4)
18       the  representative  parties  will  fairly  and
         adequately  protect  the  interests  of  the  class
19       ["adequacy of representation"].

20

21       In addition to these prerequisites, a plaintiff must

     satisfy one of the prongs of Rule 23(b) in order to
22
     maintain a class action.  Where, as here, a plaintiff
23
     moves for class certification under Rule 23(b)(2), the
24
     plaintiff must prove:
25
         the party opposing the class has acted or refused
26       to act on grounds that apply generally to the
         class,  so  that  final  injunctive  relief  or
27       corresponding  declaratory  relief  is  appropriate
         respecting the class as a whole
28

1    Where "the parties reach a settlement agreement prior
2  to class certification, courts must peruse the proposed
3  compromise to ratify both the propriety of the
4  certification and the fairness of the settlement."
5  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003).

6

7                        **III.   DISCUSSION**
8  **A.   Class Certification**
9    Based on the showing made by the parties in support
10 of the Motion for Preliminary Approval and the Motion for
11 Final Approval and as discussed more fully in the
12 Preliminary Approval Order, the Court finds the parties
13 have met their burden as to the prerequisites for class
14 certification set forth in Rule 23(a) and (b)(2).

15

16   Specifically, the Class potentially includes an
17 estimated 70,259 residents of San Bernardino County, and
18 is therefore so numerous that joinder is impracticable.
19 (Prelim. Approval Order at 5.)  As to commonality, the
20 Class is defined as people with the same qualifying
21 mobility or manual dexterity impairments.  Thus, the
22 common question of whether the particular building
23 feature is considered "accessible" is measured by the
24 same guidelines under the ADA and related statutes in
25 every Class Member's case.  (<u>Id.</u> at 6.)  As to the
26 typicality, the facts common to the proposed Class create
27
28

liability for claims that are typical to the Class –
violations of the ADA and related statutes.  (_Id._ at 7.)

As to adequacy of representation, Class counsel is
experienced and capable of fairly and competently
representing the interests of the Class.  (_See_ Parks
Decl. ¶¶ 4-20 (discussing the extensive number of cases
the DRLC has litigated, as well as the individual
expertise and experience of the purported Class counsel,
DRLC's Legal Director, Executive Director, and Staff
Attorney).)

As to the requirements of Rule 23(b)(2), the
widespread injunctive relief sought is appropriate for
the Class as a whole, since all Class Members face the
same physical barriers to access.  (Prelim. Approval
Order at 11.)

**B.  Fairness, Reasonableness, and Adequacy of the
    Settlement**

In determining whether or not the settlement is fair,
reasonable, and adequate, courts balance several factors,
including: (1) the strength of plaintiffs' case; (2) the
risk, expense, complexity, and likely duration of further
litigation; (3) the risk of maintaining class action
status throughout the trial; (4) the amount offered in
settlement; (5) the extent of discovery completed, and

1    the stage of the proceedings; (6) the experience and
2    views of counsel; (7) the presence of a governmental
3    participant; (8) and the reaction of the class members to
4    the proposed settlement.  Class Plaintiffs v. City of
5    Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992).
6
7        This is "by no means an exhaustive list of relevant
8    considerations," though, and "[t]he relative degree of
9    importance to be attached to any particular factor will
10   depend on the unique circumstances of each case."
11   Officers for Justice v. Civil Serv. Com., 688 F.2d 615,
12   625 (9th Cir. 1982).
13
14       In evaluating a proposed settlement, "[i]t is the
15   settlement taken as a whole, rather than the individual
16   component parts, that must be examined for overall
17   fairness."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026
18   (9th Cir. 1998).  The Court "does not have the ability to
19   delete, modify, or substitute certain provisions," and
20   "[t]he settlement must stand or fall in its entirety."
21   Id.  The question is not whether the settlement "could be
22   prettier, smarter, or snazzier," but solely "whether it
23   is fair, adequate, and free from collusion."  Id., 150
24   F.3d at 1027.
25
26
27
28

13

1        **1.    Strength of Plaintiffs' Case**

2        The courts evaluate the strength of the Plaintiffs'

3    case in order to "judge the fairness of a proposed

4    compromise."  <u>Carson v. American Brands, Inc.</u>, 450 U.S.

5    79, 88 n.14 (1981).  The court determines whether the

6    likelihood of success warrants the amount and form of

7    relief offered in the settlement.  <u>Id.</u>  Here, Plaintiffs

8    contend that there is a likelihood they will prevail at

9    trial because the evidence shows that the San Bernardino

10   Superior Courts were inaccessible under the standards in

11   the ADA and related statutes, which mandate public access

12   to courts.  (Parks Decl. ¶ 33.)  Plaintiffs submit that

13   the third party expert's assessments confirm Plaintiffs'

14   allegations and that the remediation plans show the

15   courthouses fell short of the legal standards.  (Mot. for

16   Prelim. Approval (Doc. No. 106) at 23-24.)

17

18       Although there is no finding and no admission of

19   liability, the Court has considered the extensive

20   modifications of the courthouses' physical features,

21   which the third party expert recommended, and to which

22   both parties have agreed, and finds that Plaintiffs have

23   met their burden of showing a likelihood of success on

24   the merits.  (<u>See</u> Settlement Ex. A (detailing the

25   remediation plans).)  Thus, the Settlement Agreement's

26   remediation plans seem adequate and fair in light of the

27   Plaintiffs' showing that the physical features may have

28

failed to meet ADA standards.  This factor therefore
weighs in favor of final approval.

### 2.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs argue that taking this case to trial would
be risky given that the injunctive relief agreed to in
the settlement might exceed that which the Court would
order following a trial on the merits.  (Mot. for Prelim.
Approval at 24.)  Plaintiffs also contend that the scope
and detail of the relief, as well as Plaintiffs' ability
to participate in fashioning the relief, would be put at
risk by going to trial.  (<u>Id.</u>)  The Court agrees that the
extent of the remedial plan, as well as Plaintiffs' heavy
involvement with its contents, would not be a certain
outcome of a trial.  Thus, the Court finds this weighs in
favor of final approval.

The "expense" and "duration" of further litigation
also weigh in favor of final approval of the settlement.
The parties both agree that it would be expensive and
time-consuming to litigate the case through trial.  (<u>Id.</u>)
The parties have already litigated this case since 2006
and have not yet filed any motions in the case save for
the Motion for Preliminary Approval and this Motion.  The
Court finds that absent a settlement, the parties likely

1   would engage in further lengthy litigation, with a
2   concomitant increase in both expense and delay.

3

4       The parties also contend that a trial would require
5   substantial documentary evidence and expert testimony.
6   (Id.)   The testimony would have to include detailed
7   descriptions of the complex and technical assessments of
8   each of the 13 courthouses.   Thus, the relative
9   complexity of the case should it continue to trial also
10  weighs in favor of final approval of the settlement.

11

12      **3.   Risk of Maintaining Class Action Status**
13           **throughout the Trial**

14      Although the parties agree that the outcome of a
15  trial is not necessarily certain, they do not address
16  whether maintaining the class action status through trial
17  would be risky.   (Id.)   Here, the Court does not find
18  that there is a specific risk of maintaining the class
19  action status.   Plaintiffs assert a class of "all
20  litigants, attorneys, witnesses, jurors, and other public
21  users of the courthouse facilities of San Bernardino
22  County, with mobility, and/or manual dexterity
23  disabilities who have used or will use courthouse
24  facilities of the Superior Court of California, County of
25  San Bernardino during the Class Period." (Settlement §
26  B.1(a).)   The numerosity of the class, as well as the
27  typicality, and commonality of their claims will likely
28

1  remain constant throughout trial.  Thus, the Court finds
2  this factor weighs against final approval.

3

4      **4.   Amount Offered in Settlement**

5      The Settlement Agreement provides solely injunctive
6  and declaratory relief for the Class Members, and thus,
7  the only monetary amounts offered in the settlement are
8  for attorneys' fees and the individual damages award to
9  Named Plaintiffs.  Under the settlement, Class counsel
10 receives $690,000.00 in attorneys' fees and the Named
11 Plaintiffs collectively receive $80,000.00.  (Settlement
12 §§ N.1, H.)  The agreement specifies that the County
13 shall be responsible for paying $365,000.00 of the
14 attorneys' fees, while the Superior Court shall be
15 responsible for paying $325,000.00 of the fees.  (Id. §
16 N.1.)  The County would also pay the $80,000.00 damages
17 award to Named Plaintiffs.  The County would issue a
18 check for this amount to the DRLC and Class counsel would
19 then apportion the damages payment to Named Plaintiffs.
20 (Id. § H.)

21

22     Plaintiffs' counsel submits that the requested
23 attorneys' fees fall below the lodestar fees and costs
24 incurred in litigating the case.  (Parks Decl. ¶ 36; see
25 also Mot. for Att'ys' Fees at 3.)  Class counsel's
26 declarations in support of the Motion for Attorneys' Fees
27 provide sufficient details to justify the requested

28

$690,000.00.  (See Doc Nos. 121.1-121.10.)  The Court
finds the requested amount of $690,000.00 to be within a
reasonable and fair range for approximately five years of
work on this case.

The Court does not find the individual damages award
to Named Plaintiffs creates a conflict of interest here.
The amount of $80,000.00 to compensate Plaintiffs' claims
under the ADA and related statutes appears reasonable
given the alleged individual harms each Plaintiff
experienced.  (See Am. Compl. ¶¶ 48-92.)  Thus, the Court
finds this amount fair and reasonable for purposes of
final approval.

**5.  Extent of Discovery Completed, and Stage of
Proceedings**

This factor requires that the Court evaluate whether
"the parties have sufficient information to make an
informed decision about settlement."  Linney v. Cellular
Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).
Here, the parties have engaged in extensive discovery and
negotiation leading up to this agreement.  Over three
years, the third party expert conducted detailed
assessments of all 13 courthouses.  (Parks Decl. ¶ 23.)
Since then, the parties continued negotiations,
exchanging four rounds of proposals for each courthouse
based on the assessments.  (Id. ¶ 25.)  The draft

1   proposals included research on the details of each access
2   feature.  (<u>Id.</u>)  The parties also conducted a number of
3   site visits to follow up on changes in site conditions
4   and to develop proposed solutions to particular access
5   barriers.  (<u>Id.</u>)  The parties met for five full-day
6   settlement negotiation meetings, as well as participated
7   in three settlement conferences.  (<u>Id.</u>)

8

9       Although the parties have already engaged in
10  extensive litigation, the parties have not filed numerous
11  motions nor conducted expensive and time-consuming pre-
12  trial preparation.  The parties have not litigated the
13  issue of class certification, and instead jointly
14  stipulated to the Motion for Preliminary Approval and to
15  this Motion.  (Doc. Nos. 106, 120.)

16

17      This factor weighs in favor of the Court finding the
18  Settlement Agreement reasonable.  It shows the attorneys
19  have spent sufficient time to allow the parties to make
20  an informed decision about settlement.  Settlement here,
21  however, would still save significant amounts of time and
22  money, which the parties would expend should the case
23  proceed to trial.  Accordingly, the Court finds that this
24  factor supports final approval of the settlement.

25

26

27

28

**6.   Experience and Views of Counsel**

Class counsel work for the DRLC and include the Center's Legal Director, Executive Director, and Staff Attorney.  (See Parks Decl. Exs. B-D (resumes of Plaintiffs' attorneys).)  Plaintiffs' attorney Shawna L. Parks has been practicing law since 1999, and has been the Legal Director of DRLC since 2009.  (Id. Ex. B.)  Ms. Parks has been involved in disability rights advocacy since 1994, working as a legal assistant, law clerk, fellow, and staff attorney at Disability Rights Advocates in Oakland, California from 1994 to 2003.  (Id. at 2.)  During her time at DRLC, she has served as counsel in at least six class actions, including cases involving similar claims for wide-sweeping injunctive relief to solve systemic accommodation and accessibility issues.  (Id. at 1.)  She also serves as an Adjunct Professor of Law at Loyola Law school and has published widely in the field of disability law.  (Id. at 3-4.)

Paula D. Pearlman also represents Plaintiffs.  Ms. Pearlman has been practicing law since 1982 and serves as the Executive Director of DRLC.  (Parks Decl. Ex. C.)  She has also published widely in the field of disability law, and has served as an adjunct and visiting professor of law at Loyola Law School since 2001.  (Id.)  She has represented clients in over 16 cases during her tenure at the DRLC, including at least nine class actions.  (Id.)

1    Plaintiffs' counsel Rebecca A. Craemer has practiced law
2    since 2006 and has worked as a staff attorney at the DRLC
3    since 2010.   The Court finds the extensive experience and
4    expertise of Plaintiffs' counsel weigh in favor of final
5    approval of the settlement.

6

7      Defendants' counsel have achieved similar levels of
8    experience and expertise in the area of disability
9    litigation.   Robert A. Naeve of Jones Day serves as
10   primary litigation counsel in this action for the
11   Superior Court and its Executive Officer, Stephen Nash.
12   (Decl. Of Robert A. Naeve ("Naeve Decl.") (Doc. No. 110)
13   ¶ 3.)   He has extensive experience advising and
14   representing public and private clients in matters
15   arising under the ADA and has acted as lead counsel for
16   public and private entities in at least 50 lawsuits
17   challenging accessibility under the ADA.   (Id. ¶ 2.)   He
18   has also published a treatise detailing the requirements
19   of ADA and its implementing regulations.   (Id.)   Defense
20   counsel Stephen E. Horan, a managing partner of Porter
21   Scott, represents the County in this action.   (Decl. of
22   Stephern E. Horan ("Horan Decl.") (Doc. No. 106-8) ¶ 1.)
23   He has also represented multiple state and local entities
24   in ADA-related access matters, including class action
25   lawsuits.   (Id. ¶ 2.)

26

27

28

1    Counsel for both Plaintiffs and Defendants support
2    the Settlement Agreement as a fair and reasonable
3    resolution of the action.  (See Horan Decl. ¶ 3; Naeve
4    Decl. ¶ 3; Parks Decl. ¶ 35.)  The Court therefore finds
5    the experience and views of counsel weigh in favor of
6    final approval.

7

8        **7.   Class Members' Reaction to the Proposed**
9             **Settlement**
10   Class counsel received only two voice messages in
11   response to the Notice.  (Mot. at 13.)  As discussed
12   above, only one of those callers expressed interest in
13   the lawsuit, and he did not have any objections to the
14   proposed Settlement Agreement.  (Id.)  The Court
15   therefore finds this factor weighs in favor of final
16   approval.

17

18       **8.  Attorneys' Fees**
19   Plaintiffs seek $690,000.00 in attorneys' fees in
20   their Motion for Attorneys' Fees.  (Mot. for Att'ys' Fees
21   at 1.)  For a settlement to be fair and adequate, "a
22   district court must carefully assess the reasonableness
23   of a fee amount spelled out in a class action settlement
24   agreement."  Staton, 327 F.3d at 963.

25

26   The $690,000.00 represents compensation for counsel's
27   work on the lawsuit and for costs incurred during
28

22

1   litigation.   (Mot. for Att'ys' Fees at 1.)   Plaintiffs

2   assert this amount "represents only 83% of Plaintiffs'

3   actual lodestar amount."   (Mot. for Att'ys' Fees at 1.)

4   At the final approval stage, the Court evaluates whether

5   this amount is fair, reasonable, and adequate for

6   purposes of settlement.

7

8        Under both California and Ninth Circuit precedent, a

9   court may exercise discretion to award attorneys' fees in

10  a class action settlement by applying either the lodestar

11  method or the percentage-of-the-fund method.   <u>Wershba v.</u>

12  <u>Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 254 (2001);

13  <u>Fischel v. Equitable Life Assurance Soc'y of U.S.</u>, 307

14  F.3d 997, 1006 (9th Cir. 2002) (citing <u>Vizcaino</u>, 290 F.3d

15  at 1047 ("Irrespective of the chosen method, 'the

16  district court should be guided by the fundamental

17  principle that fee awards out of common funds be

18  'reasonable under the circumstances.'")); <u>Alberto v.</u>

19  <u>GMRI. Inc.</u>, 252 F.R.D. 652, 667 (E.D. Cal. 2008).   Where

20  a class action settlement results in injunctive relief,

21  the court must ensure that the amount of the requested

22  attorneys' fees does not result in "'less injunctive

23  relief for the class than could otherwise have been

24  obtained.'"   <u>In re Bluetooth Headset Prods. Liab. Litig.</u>,

25  654 F.3d 935, 947 (9th Cir. 2011) (quoting <u>Staton</u>, 327

26  F.3d at 964)).

27

28

1    Here, the parties agreed to a Settlement granting
2  injunctive and declaratory relief to the class without
3  providing for a monetary award to the class.  (<u>See</u>
4  Settlement §§ C, D (laying out remediation plans and
5  requirements to verify compliance).)  Thus, since there
6  is no common fund, the Court will apply the lodestar
7  method to determine whether the amount of attorneys' fees
8  and costs agreed to under the settlement is fair and
9  reasonable.

10

11    The Court determines the lodestar amount by
12  multiplying the number of hours reasonably expended on
13  the litigation by a reasonable hourly rate.  <u>McGrath v.</u>
14  <u>Cnty. of Nevada</u>, 67 F.3d 248, 252 (9th Cir. 1995) (citing
15  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).  Next,
16  the Court must decide whether to adjust the
17  'presumptively reasonable' lodestar figure based upon the
18  factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526
19  F.2d 67, 69-70 (9th Cir. 1975), <u>cert. denied</u>, 425 U.S.
20  951 (1976), that have not been subsumed in the lodestar

21

22

23

24

25

26

27

28

1   calculation.[4]   <u>Caudle v. Bristow Optical Co., Inc.</u>, 224

2   F.3d 1014, 1028-29 (9th Cir. 2000).

3

4        In determining a reasonable number of hours, the

5   Court must examine detailed time records to determine

6   whether the hours claimed are adequately documented and

7   whether any of them are unnecessary, duplicative, or

8   excessive.   <u>Chalmers v. City of Los Angeles</u>, 796 F.2d

9   1205, 1210 (9th Cir. 1986), <u>reh'g denied</u>, <u>amended on</u>

10  <u>other grounds</u>, 808 F.2d 1373 (9th Cir. 1987) (citing

11  <u>Hensley</u>, 461 U.S. at 433-34).   To determine a reasonable

12  rate for each attorney, the Court must look to the rate

13  prevailing in the community for similar work performed by

14  attorneys of comparable skill, experience, and

15  reputation.   <u>Id.</u> at 1210-11 (citing <u>Blum v. Stenson</u>, 465

16  U.S. 886, 895 n.11 (1984)).   The Court can rely on its

17  own familiarity with the legal market in determining the

18

19        [4] <u>Kerr</u> was decided before the lodestar approach was
    adopted by the Supreme Court in <u>Hensley</u>, 461 U.S. at 433,
20  as the starting point for determining reasonable fees.
    In <u>Kerr</u>, the Ninth Circuit adopted the 12-factor test
21  articulated in <u>Johnson v. Georgia Highway Express, Inc.</u>,
    488 F.2d 714 (5th Cir. 1974); this analysis identified
22  the following factors for determining reasonable fees:
    (1) the time and labor required, (2) the novelty and
23  difficulty of the questions involved, (3) the skill
    requisite to perform the legal service properly, (4) the
24  preclusion of other employment by the attorney due to
    acceptance of the case, (5) the customary fee, (6)
25  whether the fee is fixed or contingent, (7) time
    limitations imposed by the client or the circumstances,
26  (8) the amount involved and the results obtained, (9) the
    experience, reputation, and ability of the attorneys,
27  (10) the "undesirability" of the case, (11) the nature
    and length of the professional relationship with the
28  client, and (12) awards in similar cases.

1  prevailing rate for similar work.   <u>Ingram v. Oroudjian</u>,

2  647 F.3d 926, 928 (2011).

3

4      To the extent that the <u>Kerr</u> factors are not addressed

5  in the calculation of the lodestar, they may be

6  considered in determining whether the fee award should be

7  adjusted upward or downward, once the lodestar has been

8  calculated.   <u>Id.</u> at 1212 (citing <u>Hensley</u>, 461 U.S. at

9  434).   There is a strong presumption that the lodestar

10  figure represents a reasonable fee.   <u>Jordan v. Multnomah</u>

11  <u>Cnty.</u>, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing <u>Pa. v.</u>

12  <u>Del. Valley Citizens' Council for Clean Air</u>, 478 U.S.

13  546, 565 (1986)).   An upward adjustment of the lodestar

14  is appropriate only in extraordinary cases, such as when

15  the attorneys faced exceptional risks of not prevailing

16  or not recovering any fees.   <u>Chalmers</u>, 796 F.2d at 1212;

17  <u>see also</u> <u>Blum</u>, 465 U.S. at 903 (Brennan, J., concurring);

18  <u>Hensley</u>, 461 U.S. at 448 (Brennan, J., concurring in

19  part, dissenting in part).

20

21      The party seeking the attorneys' fees bears the

22  burden of "submitting evidence supporting the hours

23  worked and the rates claimed." <u>Hensley</u>, 461 U.S. at 433.

24  A fee applicant can meet this basic requirement by

25  listing the hours worked by each individual at the firm

26  and identifying the general subject matter of those

27

28

individuals' time expenditures.   See Fische v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000).

Here, Class counsel assert that the lodestar for their fees and costs amounts to $826,117.20.   (Mot. for Att'ys' Fees at 3.)   For purposes of final approval, the amount of $690,000.00 in attorneys' fees and costs agreed to in the Settlement appears reasonable in comparison to Plaintiffs' lodestar calculation.   The Court addresses the Plaintiffs' lodestar calculation, specifically, the reasonableness of the hours Plaintiff billed, and the attorneys' hourly rates, more fully in its separate order on Plaintiffs' Motion for Attorneys' Fees.

The Settlement Agreement and Motion for Attorneys' Fees also allow Class counsel to recover reasonably incurred attorneys' fees and costs for monitoring compliance with the Settlement Agreement.   (Settlement § N.2; Mot. for Att'ys' Fees at 2.)   This amount is not to exceed $61,000.00 for "all documented time and costs spent in monitoring the Agreement."   (Mot. for Att'ys' Fees at 2.)   As discussed more thoroughly in the accompanying order, the Court finds this amount to be reasonable.   Additionally, the parties negotiated and agreed to this amount, and Plaintiffs will provide documentation for their monitoring work.

27

1    Thus, the attorneys' fees provided under the

2    Settlement Agreement weigh in favor of final approval.

3

4    **9. Conclusion**

5    The majority of the above factors weigh in favor of

6    final approval.  Only the risk of maintaining the class

7    action through trial weighs against settlement.  The

8    Court, therefore, finds the Settlement Agreement fair,

9    reasonable, and adequate.

10

11   **C.   Adequacy of Notice Procedure**

12   Rule 23 requires the court to direct to Class Members

13   "the best notice that is practicable under the

14   circumstances, including individual notice to all members

15   who can be identified through reasonable effort."  Fed.

16   R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1)

17   requires the court to "direct notice in a reasonable

18   manner to all class members who would be bound by the

19   proposal."  The notice must explain in easily understood

20   language the nature of the action, definition of the

21   class, class claims, issues and defenses, ability to

22   appear through individual counsel, procedure to request

23   exclusion, and binding nature of a class judgment.  Fed.

24   R. Civ. P. 23(c)(2)(B).  Plaintiff must provide notice to

25   potential opt-in class members that is "timely, accurate,

26   and informative."  <u>See Hoffmann-La Rouche Inc. v.</u>

27   <u>Sperling</u>, 493 U.S. 165, 172 (1989).  Likewise, claim

28

forms must be informative and accurate.  Id. at 172;
Churchhill Village, L.L.C. v. Gen. Elec., 361 F.3d 566,
575 (9th Cir. 2004) (notice is satisfactory if it
"generally describes the terms of the settlement in
sufficient detail to alert those with adverse viewpoints
to investigate and to come forward and be heard").

     On November 10, 2011, the Court approved the proposed
Notice for the Class.  (See Order at 20-22.)  In its
Preliminary Approval Order, the Court determined that the
proposed form and manner of class notice were adequate,
and the Court now evaluates whether the parties executed
class notice in accordance with the Court's Preliminary
Approval Order.

     Class counsel provided notice to the Class using the
form and process the Court preliminarily approved.  (Mot.
at 12; see Preliminary Order at 21-22.)  Class counsel
placed the Notice and the Settlement Agreement at the top
of the DRLC's website home page.  (Mot. at 12.)  Counsel
included information on the settlement in the DRLC's
weekly electronic newsletter.  (Id.)  Counsel also sent
the Notice to San Bernardino organizations with a request
they post or distribute the Notice to any interested
parties.[5]  (Id.)

_____
     [5] These organizations included Rolling Start, Inland
Counties Legal Services, Inland Empire Disability
Consortium, Inland Empire Health Plan, San Bernardino
                                        (continued...)

Additionally, Notice was posted on the San Bernardino Superior Court's website, San Bernardino County's website, and with the clerk's office of each of the Subject Courthouses.  (Mot. at 12.)

Class counsel received no written objections to the proposed Settlement Agreement, and only two telephone messages referencing the Notice.  (Mot. at 13.)  One message involved a general critique of the government and the judiciary.  (Id.)  Plaintiffs' counsel contacted the other caller, who was inquiring about the case, explained the terms of the Settlement, and then sent the complete Settlement Agreement to the caller.  (Id.)

Class counsel complied with the notice requirements of the Preliminary Approval Order.  The ultimate Notice sent to Class Members pursuant to the Preliminary Approval Order was the best notice practicable under the circumstances and provided sufficient notice to Class Members through Class counsel's reasonable effort.

---

[5](...continued)
Community College Disabled Students Program, Crafton Hills College Disabled Student Program, CSUSB Disabled Students Program, and the San Bernardino County Bar Association.  (Mot. at 12.)

**IV. CONCLUSION**

After considering the foregoing factors, Court finds the Settlement is fundamentally fair, reasonable, and adequate.  Accordingly, the Court:

    (1) GRANTS the Motion for Final Approval;

    (2) APPROVES the damages award of $80,000.00 to be paid by the County to the Named Plaintiffs according to the negotiated pro rata approach;

    (2) DISMISSES the action WITH PREJUDICE.  All Class Members shall be bound by this Order.


**IT IS SO ORDERED.**


Dated:  February 13, 2012

_____
VIRGINIA A. PHILLIPS
United States District Judge